**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARYBELLE FAYAD, on behalf of herself and all others similarly situated, | : | Civil Action No.: 2:23-cv-00032-JDW |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendant. | | |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO PROCEED AS A CLASS ACTION UNDER FED. R. CIV. P. 23</u>**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 2

   A.   Named Plaintiff and the Putative Class. ....................................................... 2

   B.   The Structure and Operations of the District Attorney's Office and the Various Units Within It. ............................................................................... 3

      1.   Paralegal Job Duties and Responsibilities Are Substantially Different Between and Within Units. ...................................................... 3

      2.   Paralegal Work Hours are Substantially Different Between Units. ............................. 9

III.    LEGAL STANDARD APPLICABLE TO RULE 23 CLASS CERTIFICATION ......... 10

IV.     ARGUMENT ..................................................................................................... 12

   A.   Plaintiff Has Not Established that the Putative Class Meets the Requirements of Rule 23(a). ........................................................................ 12

      1.   Numerosity ....................................................................................... 12

      2.   Commonality ..................................................................................... 13

      3.   Typicality. ......................................................................................... 17

      4.   Adequacy of Representative. ............................................................ 17

   B.   Plaintiff Has Not Satisfied the Requirements of Rule 23(b)(3). ................. 19

      1.   Plaintiff Has Failed to Satisfy the Predominance Requirement. .................. 19

      2.   Plaintiff Has Failed to Establish the Superiority Requirement. .................. 22

V.      CONCLUSION .................................................................................................. 23

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

Amchem Prods. v. Windsor,
    521 U.S. 591 (1997)..................................................................................................22

Brothers v. Portage Nat. Bank,
    No. 3:06-cv-000094-KRG, 2009 WL 10730421 (W.D. Pa. Mar. 24, 2009) ..............12, 15, 17

Burkhart-Deal v. CitiFinancial, Inc.,
    No. 8-1289, 2010 WL 457122 (W.D. Pa. Feb. 4, 2010)...........................................................13

Comcast Corp. v. Behrend,
    569 U.S. 27 (2013)..............................................................................................10, 11

Erica P. John Fund, Inc. v. Halliburton, Co.,
    563 U.S. 804 (2011).................................................................................................11

O'Gara ex rel. Estate of Portnick v. Countrywide Home Loans, Inc.,
    282 F.R.D. 81 (D. Del. 2012) ..................................................................................23

Georgine v. Amchem Prods.,Inc.,
    83 F.3d 610 (3d Cir. 1996).......................................................................................18

Glover v. Udren,
    No. 08-990, 2013 U.S. Dist. LEXIS 170246 (W.D. Pa. July 18, 2013) adopted
    by 2013 WL 6237990 (2013)....................................................................................18

In re Hydrogen Peroxide Antitrust Litig.,
    552 F.3d 305 (3d Cir. 2008)...............................................................................19, 20

Jarosz v. St. Mary Med. Ctr.,
    No. 10-3330, 2014 WL 4722614 (E.D. Pa. September 22, 2014)..........................................15

Pagan v. New Wilson's Meats, Inc.,
    No. 08-0751, 2011 U.S. Dist. LEXIS 52438 (E.D. Pa. May 17, 2011)...................................13

Real Estate All. v. Sarkisian,
    No. 05-cv-3573, 2007 U.S. Dist. LEXIS 70339 (E.D. Pa. Sep. 21, 2007) .............................19

Reynolds v Chesapeake & Del. Brewing Holdings, LLC,
    No. 19-2184, 2020 U.S. Dist. LEXIS87991 (E.D. Pa. May 19, 2020).............................20, 22

Reynolds v. Turning Point Holding Co.,
    No. 2:19-cf-01935, 2020 WL 7336932 (E.D. Pa. Dec. 14, 2020) (Wolson, J.) .............. *passim*

In re Schering Plough Corp. ERISA Litig.,
      589 F.3d 585 (3d Cir. 2009)........................................................................17

Schwenk v. Garcia,
      No. 1:21-CV-02079, 2023 U.S. Dist. LEXIS 11753 (M.D. Pa. Jan. 24, 2023).....................23

Semenko v. Wendy's Int'l, Inc.,
      No. 2: 12-cv-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) ...........................15

Swank v. Wal-Mart Stores, Inc.,
      No. 2:13-cv-1185, 2018 WL 2684102 (W.D. Pa. June 5, 2018) ...........................21

Thakker v. Doll,
      336 F.R.D. 408 (M.D. Pa. 2020)..................................................................17

Wal-Mart Stores, Inc. v. Dukes,
      564 U.S. 338 (2011)...............................................................11, 13, 14

In re Warfarin Sodium Antitrust Litig.,
      391 F.3d 517 (3d Cir. 2004)........................................................................23

**Federal Statutes**

Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* .........................................................2

**State Statutes**

Pennsylvania Minimum Wage Act, 43 P.S. § 333.100, *et seq.* .....................................1, 2, 12, 21

**Rules**

Fed. R. Civ. P. 23 ........................................................................ *passim*

Fed. R. Civ. P. 23(a) .................................................................11, 12, 17, 19

Fed. R. Civ. P. 23(a)(1)..............................................................12, 13

Fed. R. Civ. P. 23(a)(2)...................................................................13

Fed. R. Civ. P. 23(a)(3)...................................................................17

Fed. R. Civ. P. 23(a)(4).................................................................17, 19

Fed. R. Civ. P. 23(b).....................................................................11

Fed. R. Civ. P.  23(b)(1), (2)...........................................................11

Fed. R. Civ. P. 23(b)(3)................................................................11, 19, 22

Defendant City of Philadelphia ("Defendant") hereby submits this Brief in Opposition to Plaintiff's Motion to Proceed as a Class Action Under Fed. R. Civ. P. 23.

## I.      INTRODUCTION

Plaintiff Marybelle Fayad ("Plaintiff" or "Plaintiff Fayad") asks this Court to certify a group of Paralegals ("Paralegals") employed in Defendant's District Attorney's Office ("DAO") as a class under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") for purposes of her Pennsylvania Minimum Wage Act, 43 P.S. §333.100, *et seq.* ("PMWA") claim for unpaid overtime.  Plaintiff falls well short of satisfying the rigorous burden required to certify the putative class under Rule 23.  Plaintiff simply cannot escape the fact that her claims under the PMWA are wholly unsuitable for class treatment, as proceeding as a Rule 23 class would ultimately require this Court to undertake countless fact-specific mini-trials.

Months-long class discovery has irrefutably revealed that the putative class members, who work in separate and distinct DAO units ("Units"), are substantially different in ***almost every way*** relevant to the class certification analysis, including in the duties they perform, the responsibilities they have, the hours that they work, and the supervisors to whom they report. Plaintiff's own testimony confirms that she does not know the duties and hours of the vast majority of the putative class.  Try as she might, Plaintiff's testimony regarding duties ***she*** performed and hours ***she*** worked during her employment in just 3 of 25 DAO Units simply cannot establish the day-to-day duties of Paralegals on a class-wide basis and whether the class as a whole worked over 40 hours in any given workweek, exposing the predominance of individual questions.

Under Plaintiff's theory, the Court and/or a jury will need to determine – for each and every putative class member – (1) whether or not each class member's duties render him or her

exempt as a matter of law and (2) whether each individual class member worked over 40 hours in any given workweek without being properly compensated.  In other words, the questions posed by Plaintiff's claims will not yield common answers and are not capable of class-wide resolution, as they inherently require highly individualized factual inquiries.  This completely belies the class action mechanism.  Therefore, the Court should deny certification.

## II.    FACTUAL BACKGROUND

### A.    Named Plaintiff and the Putative Class.

On January 4, 2023, Plaintiff Fayad, a current Paralegal working in Defendant's DAO, initiated this action on behalf of herself and others similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA") and the PMWA.  (Doc. No. 1.)  Plaintiff Fayad has worked in just 3 out of 25 DAO Units during her tenure with Defendant.  (Doc. No. 31-24, Fayad Tr. 11:10-12, 17:8-10, 23:3-10.)  Rebecca Schnitzer ("Plaintiff Schnitzer"), a former DAO Paralegal, opted-in to this case on September 11, 2023.  (Doc. No. 20.)  Plaintiff Schnitzer worked in only 2 out of 25 DAO Units.  (Doc. No. 31-2, Schnitzer Tr. 11:23-12:1.)

Plaintiff alleges that Defendant failed to pay her and the putative class members overtime for hours worked over 40 in a workweek due to Defendant's misclassification of Paralegals as exempt in violation of the FLSA and PMWA.  (Doc. No. 1.)

The putative Rule 23 class is defined by Plaintiff as:

All persons presently or formerly employed by Defendant in the position of Paralegal with the Philadelphia District Attorney's (D.A.) Office or in positions with substantially similar job duties, who worked for Defendant at any point in the past three (3) years who were denied overtime compensation at their regular rate of pay for all hours worked over forty (40) in a workweek due to their misclassification as "exempt" under the PMWA and who were paid on a salary basis.

(Doc No. 1 ¶ 20.)

**B.     The Structure and Operations of the District Attorney's Office and the Various Units Within It.**

The DAO consists of over two dozen Units, each responsible for addressing different functions of the DAO.[1]  Each Unit has a chief who is responsible for supervising the Unit and its staff ("Supervisor").  As each Unit performs different functions, Paralegals in each Unit perform different duties and are tasked with different responsibilities.  Moreover, as explained infra, even Paralegals within the same Unit have significantly different roles.  Paralegals have different duties, working conditions, hours, and responsibilities that are specific to their individual Unit and their own individual assignment within the Unit.

### 1.  *Paralegal Job Duties and Responsibilities Are Substantially Different Between and Within Units.*

DAO Paralegals have very different duties, roles, and responsibilities, many of which are far different from what might be expected of an individual with a "paralegal" job title.  In fact, in order to fulfill Plaintiff's request to depose persons with knowledge of the duties of the DAO Paralegals, Plaintiff deposed 20 Supervisors.  (Doc. No. 31-4 – Doc. No. 31-23.) The fact that testimony from *20 individuals* was needed to simply identify the duties and responsibilities of the putative class members speaks volumes about the merits (or lack thereof) of Plaintiff's class certification attempt.  Indeed, the 20 Supervisors' testimony highlighted the true variety in duties and responsibilities of DAO Paralegals.  A review of the deposition transcripts [Doc. No. 31-4 – Doc. No. 31-23.] and Supervisor declarations [Doc No. 26-1 – Doc. No. 26-4.] show that these substantial differences cannot be ignored—despite Plaintiff's clear attempt to do so.

For example, the Child Support Enforcement Unit ("CSEU") represents, by agreement, custodial parents in the establishment and enforcement of child support obligations.  (Doc. No.

---

[1] A list of the Divisions and Units comprising the DAO is provided on the DAO's website.  See https://phillyda.org/about/divisions-units-and-supervisors/.

31-15, Esmonde Tr. 11:5-12:7.)  CSEU Paralegals function essentially as "collection agents," independently managing approximately 2,500 cases to track and collect money from personal injury awards, workers' compensation payments, or estate funds belonging to an individual who owes child support in an open family court case.  (Doc. No. 26-1; Doc. No. 31-15, Esmonde Tr. 11:5-13, 12:1-25.)  This primary duty varies substantially from Paralegals in other Units.  Take the data entry-forward position of the Juvenile Diversion Unit ("JDU") Paralegal, for example.  The primary duty of JDU Paralegals is to create, maintain, and update spreadsheets with data containing youth information, victim information, data regarding crime trends, performance management, and internal quality assurance factors.  (Doc. No. 31-17, King Tr. 11:4-12:7.)

Different still is the Conviction Integrity Unit ("CIU").  Paralegals in the CIU investigate, evaluate, and prioritize claims for actual innocence, wrongful convictions, and/or excessive sentencing.  (Doc. No. 26-2.)  CIU Paralegals independently evaluate information received from the Philadelphia Police Department regarding potential police misconduct claims, using their own judgment to provide input to a committee of senior prosecutors as to whether the facts of the claim merit inclusion in the Unit's active database.  (Id.)  CIU Paralegals regularly interact with outside agencies, incarcerated individuals, defense attorneys, and non-lawyer advocacy groups, and they also go into the field to assist with witness interviews.  (Doc. No. 31-21, Garmissa Tr. 17:13-19:1.)  Some CIU paralegals screen *pro se* submissions for the CIU.  (Id. at 22:6-22.)

Contrast the foregoing Paralegals with a Special Investigations Unit ("SIU") Paralegal, who manages, monitors, and maintains the investigating grand jury by acting as the DAO liaison in interactions with stenographers, witnesses, jurors, and the court.  (Doc. No. 31-5, Retacco Tr. 13:3-8.) In addition to administratively managing the grand jury, this Paralegal also performs administrative work for the SIU itself, including managing the day-to-day activities and

schedules of the ADAs, Paralegals, and other SIU staff.  (Id. 13:8-18.)  This position stands in stark contrast with yet another group of Paralegal positions in the Private Criminal Complaint Unit ("PCCU").  PCCU Paralegals are charged with receiving and evaluating the validity of criminal complaints made to the DAO by private parties.  (Doc. No. 26-3.)  PCCU Paralegals routinely exercise independent discretion in analyzing whether the facts underlying a private criminal complaint would qualify as a crime under the Crimes Code and, depending on their determination, taking appropriate next steps, including the drafting of a complaint.  (Id.; Doc. No. 31-14, Dellafiora Tr. 17:9-18:1.)  Paralegals in the Adult and Juvenile Carjacking Units open files for their Units, provide trial support through creation of video trial exhibits, and screen prison recordings for pertinent evidence.  (Doc. No. 31-22, Listenbee Tr. 10:16-23, 11:12-15, 11:19-22, 12:8-13:16.)

Paralegals in the Diversion Unit review cases for eligibility for acceptance into the Unit, attend court, and interact directly with judges and court staff.  (Doc. No. 31-7, Flores Tr. 11:9-12:6.)  In contrast, Paralegals in the Civil Litigation Unit ("CLU") have no involvement with the criminal justice system whatsoever, as the CLU handles civil litigation against the DAO, which is related to its prosecutorial function and operations, such as malicious prosecution claims, §1983 claims, employment discrimination claims, Right to Know requests, and drafting contracts and MOUs with other agencies.  (Doc. No. 31-13, Lin Tr. 22:14-24:18.)  CLU Paralegals rarely attend court and primarily oversee intake and discovery responsibilities for the Unit.  (Id. at 13:5-14:11.)  Like the CLU, the Federal Litigation Unit ("FLU") functions outside the criminal court system, handling post-conviction civil litigation.  (Doc. No. 31-18, Ernst Tr.14:16-20.)  Responsibilities for Paralegals in the FLU include maintaining the court dockets, case

preparation, interacting with defense counsel and the Philadelphia Police Department, and screening prison phone calls for relevant information.  (Id. at 11:4-12:13, 14:3-11.)

In contrast, Juvenile Diversion Unit ("JDU") Paralegals have no trial support role, but instead provide data reporting on crime trends, performance management, and quality assurance, support internal and external screening for the Unit, and create PowerPoints and questionnaires for the Unit. (Doc. No. 31-17, King Tr. 11:4-12:7, 14:19-15:13.)  In the Mental Health Unit ("MHU"), Paralegals are responsible for interacting directly with victims to obtain consent for diversionary mental health treatment and the waiver of restitution.  (Doc. No. 31-11, Braxton Tr. 21:23-23:23, Doc. No. 31-24, Fayad Tr. 14:15-16:7.)  Plaintiff Fayad further testified that while she was working in the MHU, she was responsible for responding to the Unit hotline, summarizing and synthesizing information for her Supervisor, and making recommendations for which cases should be accepted into the MHU.  (Doc. No. 31-24, Fayad Tr. 20:16-23, 29:22-30:12, 34:1-4.)

The differences in Paralegal duties do not just differ amongst Units.  To the contrary, even singular Units have different Paralegals performing significantly different duties.  For example, the Financial Crimes Unit ("FCU") has a Paralegal who is responsible for handling all case referrals from the Pennsylvania Department of Labor with respect to unemployment compensation matters.  (Doc. No. 31-19, Esack Tr. 14:19-15:2.)  This Paralegal is tasked with processing all referrals in intake, charging on cases that are appropriate, conducting appropriate outreach, scheduling cases with court administration, and attending court status conferences without any direct ADA supervision.  (Id. at 15:3-16:1.)  When attending court, this Paralegal makes significant decisions about cases, dates, continuances, and statuses in real time without any direct supervision and interacts directly with defendants.  (Id. at 32:12-21.)  She also liaisons

directly with the Department of Labor and Industry and court administration on behalf of the DAO.  (Id. at 15:15-23.)

Another FCU Paralegal is responsible for maintaining all insurance fraud case statistics. (Id. at 16:3-13.)  As a grant-funded position, this Paralegal completes all administrative work for the grant, including compiling quarterly, biannual, and annual statistics.  (Id. at 18:15-24.)  Yet another FCU paralegal acts as an assistant to the FCU ADAs with respect to case investigations, case trial preparation.  This FCU Paralegal also oversees the public complaint line and email address, in which capacity she independently and directly interacts with victims and provides case review and referrals to appropriate agencies.  (Id. at 19:1-21:4, 31:13-32:12.)  Another FCU paralegal is assigned to handle Auto Theft cases exclusively for a grant funded position, and, in this capacity, is responsible for keeping and maintaining statistics in compliance with the grant requirements and directly interacting with the victim vehicle owners.  (Id. at 21:5-22:5.)  The last FCU paralegal is assigned to the Elder Justice sub-unit and interacts directly with elderly victims and outside agencies.  (Id. at 22:6-17.)

Another example of a Unit with staggeringly different Paralegal duties within it is the Charging Unit.  In the Charging Unit, which is responsible for responding to every arrest made in the City of Philadelphia, there are two categories of Paralegals.  (Doc. No. 26-4.)  One set of Paralegals, sometimes referred to as "District Attorney Representatives," represent the DAO in all bail hearings on behalf of the DAO.  (Doc. No. 31-4, Orem Tr. 11:17-19; Doc. No. 26-4.) The other Charging Unit Paralegals are responsible for preparing all charging packets after an arrest is made.  (Doc. No. 31-4, Orem Tr: 14:10-15.)  These Paralegals conduct significant background research when a new arrest comes in to prepare the charging packets.  (Id. at 15:9-21; 22:15-19.)  The research that is needed is specific to the type of arrest, and these Paralegals

use their independent discretion to decipher what checks and reports are appropriate to run and what paperwork is necessary to obtain depending on the potential charge.  (Id.)

Similarly, the Gun Violence Task Force ("GVT") Paralegals have distinct responsibilities.  (Doc. No. 31-23, Fritze Tr. 11:12-15.)  For example, one GVT Paralegal is in charge of the investigative grand jury, independently working with court administration to schedule cases and jurors for the same.  (Id. at 11:16-22.)  The same GVT Paralegal handles preparing subpoenas for the grand juries.  (Id.)  Another GVT Paralegal is responsible for victim and witness outreach and assisting with investigations to obtain corroborating evidence.  (Id. at 13:1-4.)  Yet another paralegal in the GVT coordinates with the Pennsylvania Attorney General's Office Joint Task Force investigating firearms straw purchasing crimes.  (Id. at 9:4-14, 12:7-16.)  Within the Municipal Court Unit, some Paralegals staff Motions Court rooms, some staff Trial Court rooms, one paralegal is dedicated to fugitive from justice cases, and one is primarily responsible for communication with victims and witnesses.  (Doc. No. 31-12, Belisonzi Tr. 15:1-18, 17:23-18:6.)

The Immigration Unit has one paralegal, and she handles all initial intake for the Unit's cases, does all initial contact with complaining witnesses, and is responsible for preparing all documentation for U and T Visa certifications on their behalf.  (Doc. No. 31-8, Arnold Tr. 9:9-19.)  In the Emerging Adult Unit, Paralegals perform case management duties, including maintaining spreadsheets, conducting data analyses, researching and interacting with community-based programs to support diversionary programs for young adults, and assisting with internal training.  (Id. at 16:6-17:11)

Simply put, the duties and responsibilities of a Paralegal, which determine the exemption status of the Paralegal, vary immensely depending on which individual Paralegal is being

examined.  Indeed, some Paralegals even exercise supervisory authority over other paralegals. (Doc. No. 31-24, Fayad Tr. 23:11-15.)  No assumptions or generalizations can be made based simply or solely on the individual having the job title of "Paralegal."

### 2.  *Paralegal Work Hours are Substantially Different Between Units.*

While Plaintiff focuses on the fact that Paralegals, like all other employees of Defendant's DAO, report their hours through Defendant's electronic timekeeping system, Plaintiff ignores the fact that Paralegals work very different schedules and hours.  While Paralegals are expected to work 37.5 hours per week, how Paralegals get to that number each week varies, and they each receive an unpaid 1-hour lunch break.  (Doc. No. 31-24, Fayad Tr. 37:1-7.)  For example, some JDU Paralegals work 7:00 AM to 3:00 PM, and others work 9:00 AM to 5:00 PM, while CSEU Paralegals work strictly 6:00 AM to 2:30 PM.  (Doc. No. 31-17, King Tr. 15:15-21; Doc. No. 31-15, Esmonde Tr. 18:18-22.)  Some Paralegals often never even reach 37.5 hours per week.  Take the FLU Paralegals, for example.  Supervisor Ernst testified that her Paralegals typically come in closer to 10:00 AM and leave before 4:30 PM.  (Doc. No. 31-18, Ernst Tr. 15:18-20, 17:1-12.)  Similarly, the GVT Paralegals work from 9:00 AM to 4:30 PM with an hour lunch in between, clearly not totaling 37.5 hours per week.  (Doc. No. 31-23, Fritze Tr. 16:4-13.)

The most diverse schedule is worked in the Charging Unit.  Because the Charging Unit must be staffed 24 hours a day, the Paralegals perform shiftwork.  (Doc. No. 26-4.) Weekday Paralegals work either 7:00 AM to 3:00 PM or 3:00 PM to 11:00 PM, Monday through Friday. (Id.)  Overnight Paralegals work Sunday through Thursday from 11:00 PM to 7:00 AM. Weekend Paralegals work 11:00 PM to 11:00 AM Friday and Saturday, for a total of 24 hours per week.  (Id.)  Weekend Paralegals may be scheduled to work two additional 8-hour shifts

during the week if there are understaffed days.  (Id.)  District Attorney Representative Paralegals attend and present arraignments on behalf of the DAO, but they are relieved of duty for up to four hours between the calls of the case listings.  (Doc. No. 31-4, Orem Tr. 20:15-21:9.)

While Plaintiff's putative class definition requires that Paralegals work more than 40 hours in a workweek, several Supervisors testified that their Paralegals never work more than 40 hours in a workweek.  (Doc. No. 26-1 – Doc. No. 26-3.)  Even Plaintiff Fayad confirmed that she did not work over 40 hours in a workweek in certain Units.  (Doc. No. 31-24, Fayad Tr. 36:22-37:14, 37:17-23.)  Paralegals also have the flexibility to, and do, adjust their schedules to account for the infrequent occasion when they may work later than usual, while keeping their total weekly hours under 40.  (Doc. No. 26-2; Doc. No. 31-9, Yankolonis Tr. 16:20-18:2; Doc. No. 31-8, Arnold Tr. 12:11-19.)  For example, Paralegals may take a longer lunch or leave early on a different day.  (See id.)  In other words, staying late one day does not necessarily indicate that over 40 hours were worked in the same week, as "[i]t is always made up somehow along the way."  (Doc. No. 31-16, Pescatore Tr. 17:18-22.)

Again, the schedule and hours worked by Paralegals cannot be assumed or demonstrated simply because the individual works or worked in the position of "Paralegal."  The putative class worked significantly different hours, and even the same Paralegal's schedule may vary day-to-day or week-to-week due to the flexibility available to DAO Paralegals.

### III.    LEGAL STANDARD APPLICABLE TO RULE 23 CLASS CERTIFICATION

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (citation omitted).  This Court has recognized and cautioned that "a court must be careful not to certify a class 'casually.'"  Reynolds v. Turning Point Holding Co., No. 2:19-cf-01935, 2020 WL

7336932, at *6 (E.D. Pa. Dec. 14, 2020) (Wolson, J.) (citation omitted).  Instead, class certification is "proper only if the trial court is satisfied, after a rigorous analysis, that all of the necessary requirements have been fulfilled."  Id. (citation omitted).  These requirements are set forth in Federal Rule of Civil Procedure 23, and, a putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3).  Id. (citing Fed. R. Civ. P. 23(a)-(b)).

Plaintiff's first hurdle is to prove by a preponderance of the evidence that the proposed class satisfies the following elements of Rule 23(a):

    (1) The class is so numerous that joinder is impracticable;
    (2) There are questions of law or fact common to the class;
    (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) The representative parties will fairly and adequately protect the interests of the class.

See Fed. R. Civ. P. 23(a); Comcast Corp., 569 U.S. at 27.  These four prongs are often referred to as numerosity, commonality, typicality, and adequacy.  See id.

In addition to these four requirements, Plaintiff must satisfy at least one of the separate requirements of Rule 23(b).  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  Where, as here, Plaintiff seeks to have the class certified under Rule 23(b)(3), the inquiry "is even more demanding" because it implicates "the … duty to take a 'close look at whether common questions predominate over individual ones.'" Comcast Corp., 569 U.S. at 34 (citation omitted). In ascertaining whether "questions of law or fact common to class members predominate," courts must "begin, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton, Co., 563 U.S. 804, 809 (2011).

11

## IV.   ARGUMENT

Plaintiff believes that her PMWA claim for unpaid overtime satisfies the rigors of Rule 23 simply because the putative class members have worked/are working for Defendant's DAO in the position of "paralegal" and were/are classified by Defendant as exempt.  However, Plaintiff has oversimplified this complex analysis, and any more than a cursory review of the facts applied to applicable law compels the conclusion that Plaintiff is wrong and that class certification must be denied.

### A.   Plaintiff Has Not Established that the Putative Class Meets the Requirements of Rule 23(a).

#### 1.  *Numerosity.*

To satisfy the numerosity requirement of Rule 23(a)(1), Plaintiff must show that the class is so numerous that joinder is impracticable, and "the policy goals of class action procedures will be vindicated."  Brothers v. Portage Nat. Bank, No. 3:06-cv-000094-KRG, 2009 WL 10730421, at *7 (W.D. Pa. Mar. 24, 2009).  Plaintiff asserts that the numerosity requirement is met because the putative class consists of approximately 200 class members.  (Doc. No. 31, p. 3.)  While this estimation is numerically accurate with respect to how many DAO Paralegals were employed by Defendant in the past three (3) years, Plaintiff has offered no explanation as to how numerosity is met ***with respect to Paralegals who would meet the putative class definition***—namely, Paralegals who worked more than 40 hours in a workweek without proper compensation.

Despite months of class discovery, Plaintiff has provided testimony from only two individuals with alleged unpaid compensation for hours worked over 40 in a workweek— Plaintiff Fayad and Plaintiff Schnitzer.  This plainly falls short of the requirements under Rule 23(a)(1).  Moreover, Plaintiff simply ignores the testimony from several Supervisors that their Paralegals never work more than 40 hours in a single workweek.  Indeed, both Plaintiff Fayad

and Plaintiff Schnitzer concede that they simply have no idea whether other Paralegals (in their Units or otherwise) worked over 40 hours in a workweek.  (Doc. No. 31-2, Schnitzer Tr. 23:3-6; Doc. No. 31-24, Fayad Tr. 42:9-10.) This absence of evidence is fatal to Plaintiff's ability to show numerosity.  See Burkhart-Deal v. CitiFinancial, Inc., No. 8-1289, 2010 WL 457122 (W.D. Pa. Feb. 4, 2010) (finding alleged class of 700 was insufficient where class definition required class members work over 40 hours without overtime compensation where there was insufficient evidence that a larger number of employees were not properly compensated); Pagan v. New Wilson's Meats, Inc., No. 08-0751, 2011 U.S. Dist. LEXIS 52438 (E.D. Pa. May 17, 2011) (determining that alleged class of 120-350 former employees was insufficient because claims at issue depended on "subjective considerations" to determine whether compensable time was actually worked by each putative class member).

For these reasons, Plaintiff has failed to satisfy the numerosity requirement of Rule 23(a)(1).

### 2. *Commonality.*

Plaintiff is correct that, under Rule 23(a)(2), she must show that the putative class members' claims share a common question of law or fact.  See Dukes, 564 U.S. at 350. However, Plaintiff improperly stops her inquiry there, completely ignoring that she must do more than simply articulate questions of law and fact common to all class members to meet the commonality requirement.  (Doc. No. 31, pp. 3-4.)  It is well-established that Plaintiff must also prove that such common questions ***will generate common answers*** across all putative class members.  See Dukes, 564 U.S. at 390 ("What matters to class certification . . . is not the raising of common 'questions' —even in droves— but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (emphasis in original).

13

Plaintiff's common question must be "capable of class-wide resolution"—meaning that the common answer "resolve[s] an issue that is central to the validity of each one of the claims *in one stroke*." Id. at 389-90 (emphasis added). Plaintiff makes no effort to demonstrate this requirement in her Motion. Instead, Plaintiff vastly oversimplifies the inquiry that must be done to assess the merits of the claims asserted against Defendant, focusing only on the common question, without any consideration whatsoever of its capability of class-wide resolution.

Here, there are no common answers to the questions posed by Plaintiff's claims. The answers to such questions require dozens—if not hundreds—of individualized analyses and determinations, which negates commonality.

First, Plaintiff alleges that Defendant misclassified its paralegals as exempt. Plaintiff's insistence that her misclassification argument is amenable to class-wide resolution simply because "[a]ll of the prospective class members are Paralegals within Defendant's DAO who were/are classified as exempt" completely ignores the glaring issue that the question of proper exemption status depends on the particular employee's actual day-to-day duties and responsibilities—which, for the putative class, vary significantly. Due to the significant variety in Paralegal duties, answering the question of whether the putative class members were primarily engaged in exempt duties will necessarily turn on individualized inquiries into what each individual Paralegal *actually does* on a day-to-day basis. This issue is not just theoretical. To be sure, Plaintiff had to depose 20 Supervisors to answer the basic question of what DAO Paralegals do. Moreover, the testimony elicited at the 20 depositions demonstrated the significant variety in Paralegal duties and responsibilities. See supra Sec. II(B)(1). Because the "fundamental and necessary elements" of Plaintiff's claims of misclassification would require an "individualized

determination" of whether each individual class member's distinct duties and responsibilities qualify for an exemption, commonality is not met.  See Brothers, 2009 WL 10730421 at *8.

Beyond the threshold question of whether Defendant misclassified any DAO Paralegals is the equally significant question of whether each Paralegal worked over 40 hours in a workweek without proper compensation.  Even if this question is common to the class, it will certainly not yield common answers, as there will need to be individualized assessments of hours worked by each and every Paralegal in the class.  See Jarosz v. St. Mary Med. Ctr., No. 10-3330, 2014 WL 4722614, at *9-10 (E.D. Pa. September 22, 2014) (finding individualized inquiries to show that potential class members worked through meal breaks and were not paid for their work precluded a finding of commonality, despite the existence of a common question of law).

 Ultimately, courts will not certify class actions where individualized determinations are needed because commonality does not exist if adjudication of the individual class members' claims "would require a number of individual mini-trials." Semenko v. Wendy's Int'l, Inc., No. 2: 12-cv-0836, 2013 WL 1568407, at *8 (W.D. Pa. Apr. 12, 2013) (citation omitted); see also Brothers, 2009 WL 10730421 at *8 (finding commonality did not exist where "proceeding as a class would require an individualized determination of how much time a particular employee spent actually working").

Here, Plaintiff does not point to the existence of any common, objective evidence that would demonstrate the number of hours, if any, that a Paralegal works over 40 in a workweek. Plaintiff Fayad and Plaintiff Schnitzer themselves assert that there is no complete written record of Paralegal hours worked.  (Doc. No. 31-2, Schnitzer Tr. 20:4-6; Doc No. 31-24, Fayad Tr. 38:14-22.) Without any common evidence to show Paralegals work over 40 hours in a workweek, Plaintiff attempts to rely on her own testimony identifying a handful of people she

claims to have seen around the office after 5:00 PM or 5:30 PM on a particular day.  (Doc. No. 31-24, Fayad Tr. 57:4-58:6.)  However, her sparse, vague testimony does not prove that any of these individuals *actually worked over 40 hours in a workweek* because she has no idea when they started work on the day she saw them or what hours they worked during that week.  With some Paralegals not beginning work until 9:00, 9:30, or 10:00 AM, being in the office at 5:00 PM or 5:30 PM would not necessarily demonstrate overtime being worked.  (Doc. No. 31-18, Ernst Tr. 15:18-20, 17:1-12; Doc. No. 31-12, Belisonzi Tr. 19:11-13; Doc. No. 31-24, Fayad Tr. 37:8-10.)

Moreover, several Supervisors testified that their Paralegals often adjust their schedules by taking a half-day or coming in late in the rare event they worked late one day.  (Doc. No. 26-2; Doc. No. 31-9, Yankolonis Tr. 16:20-18:2; Doc. No. 31-8, Arnold Tr. 12:11-19.)  Even Plaintiff Fayad conceded that she was able to "flex" her hours when working in the CIU.  (Doc. No. 31-24, Fayad Tr. 36:20-37:12.)  Therefore, Plaintiff Fayad seeing a Paralegal in the office after 5:00 or 5:30 is hardly evidence that that Paralegal worked over 40 hours in a workweek, and regardless, it cannot be evidence that other Paralegals did so.  Instead, evidence from each individual Paralegal would be needed to determine whether each individual Paralegal worked over 40 hours in a workweek.

There is simply no way to determine, without resorting to an individualized inquiry, (1) whether an individual Paralegal's duties and responsibilities render them non-exempt and (2) if so, whether that Paralegal worked over 40 hours in a workweek without proper compensation.  Therefore, commonality is not met, and the class may not be certified.

### 3. *Typicality.*

Plaintiff similarly has failed to demonstrate the typicality requirement of Rule 23(a)(3). To satisfy the typicality requirement, Plaintiff must demonstrate that "the claims and defenses of the representative [are] sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 598 (3d Cir. 2009). To evaluate this requirement, "courts must consider the attributes of the proposed representatives, the class as a whole, and the similarity between the proposed representatives and the class." Id. at 597.

Here, Plaintiff has not shown that the underlying factual basis for her claims are similar to those of the class as a whole. The testimony of Plaintiff Schnitzer and Plaintiff Fayad confirmed that, while they both claim to have worked over 40 hours in some workweeks, they have ***no knowledge of the hours worked by other Paralegals.*** (Doc. No. 31-24, Fayad Tr. 42:9-10; Doc No. 31-2, Schnitzer Tr. 23:3-6.) The record is bereft of any evidence showing that the other members of the putative class ever worked over 40 hours in a workweek. Moreover, there is ample evidence to the contrary. (Doc. No. 26-1 – Doc. No. 26-3.) For these reasons, Plaintiff has failed to meet the typicality requirement under Rule 23(a)(3). See Thakker v. Doll, 336 F.R.D. 408, 417 (M.D. Pa. 2020) (finding typicality requirement not satisfied where factual and legal differences show that class action "would not be reasonably economical"); Brothers, 2009 WL 10730421 at *8 ("[T]he typicality requirement cannot be met where individualized fact inquiries are required for every prospective plaintiff.").

### 4. *Adequacy of Representative.*

The final requirement of Rule 23(a) is that the named plaintiff "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of a representative is

determined by two components: (1) "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees," and (2) "class counsel must be qualified and must serve the interests of the *entire* class." Georgine v. Amchem Prods.,Inc., 83 F.3d 610, 630 (3d Cir. 1996) (emphasis in original).  "The adequate representation requirement overlaps with the typicality requirement because in the absence of the typical claims, the class representative has no incentive to pursue the claims of the other class members." Glover v. Udren, No. 08-990, 2013 U.S. Dist. LEXIS 170246, at *47 (W.D. Pa. July 18, 2013), adopted by 2013 WL 6237990 (2013) (internal citation omitted).

Here, Plaintiff Fayad is not an adequate class representative.  Plaintiff Fayad seeks to represent a class based upon Defendant's alleged failure to compensate the class for hours worked over 40 hours in a workweek; yet she testified that she has no knowledge of hours worked by the class.  (Doc. No. 31-24, Fayad Tr. 42:9-10.)  Plaintiff's claims also hinge on Defendant's alleged misclassification of the putative class members as exempt; yet, again, Plaintiff Fayad has no knowledge of the duties and responsibilities of Paralegals in the vast majority of the DAO.  (Id. at 41:22-43:1.)  What is more, Plaintiff Fayad admitted that she had an atypical relationship with her Supervisor, that she performed different duties based on her atypical relationship, and that she worked atypical hours even for her Unit.  (Id. at 30:14-31:12.) Plaintiff Fayad conceded that her Supervisor referred to her as her "assistant" and told other individuals that Plaintiff Fayad effectively ran the MHU, prompting others to refer to her as her Supervisor's "mini-me."  (Id. at 30:14-19, 49:19-50:1)

Moreover, Plaintiff Fayad has asserted other claims against Defendant outside of this litigation and before the Equal Employment Opportunity Commission at EEOC Case No. 530-2023-04101.  (See Exhibit 1.)  Accordingly, there is an inherent risk that Plaintiff Fayad's other

claims may affect her prosecution of the claims in this litigation in a manner which could adversely affect the putative class members.  Because of this conflict and misalignment of interests, Plaintiff is unable to meet the adequacy requirement of Rule 23(a)(4).  See Real Estate All. v. Sarkisian, No. 05-cv-3573, 2007 U.S. Dist. LEXIS 70339, at *10-11 (E.D. Pa. Sep. 21, 2007) (finding that because plaintiff filed an individual, unrelated lawsuit against defendant, "her interests do not align with the proposed class at large and she cannot adequately serve as a representative").

In short, Plaintiff cannot claim to be an adequate representative of the putative class, and class certification should also be denied for this reason.

**B.     Plaintiff Has Not Satisfied the Requirements of Rule 23(b)(3).**

Plaintiff asks this Court to certify the class pursuant to Rule 23(b)(3).  This particular provision of Rule 23 has two components, both of which must be satisfied in order to certify a class.  First, Plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual members.  See Fed. R. Civ. P. 23(b)(3). Second, Plaintiff must show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  See id.  Plaintiff has failed to satisfy both requirements.

**1.   *Plaintiff Has Failed to Satisfy the Predominance Requirement.***

While the predominance test bears some similarity to Rule 23(a) elements, it is "a standard 'far more demanding' than the commonality requirement." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008) (citation omitted).  Despite the demanding standard, Plaintiff dedicates less than a page of her Brief to establish predominance, in which she summarily concludes that predominance has been met.  Her conclusory assertions that common

issues predominate and that the nature of the putative class members' duties is subject to common proof simply fail to hold water.

A common question is "one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized class-wide proof." Reynolds v Chesapeake & Del. Brewing Holdings, LLC, No. 19-2184, 2020 U.S. Dist. LEXIS87991, at *17 (E.D. Pa. May 19, 2020).  In contrast, an individual question is "one where members of a proposed class will need to present evidence that varies from member to member." Id. (finding predominance not met where record was focused on uncompensated hours worked by *plaintiff* as opposed to those of the *class members*).  Because the nature of the evidence that will serve to resolve a question determines whether the question is common or individual, the court "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate."  In re Hydrogen Peroxide, 552 F.3d at 311.  To assess predominance at the class certification stage, the court "must determine whether the essential elements of the claims brought by the putative class 'are capable of proof at trial through evidence that is common to the class rather than individual to its members.'" Reynolds, 2020 WL 7336932 at *7 (citing Gonzalez v. Corning, 885 F.3d 186, 195 (3d Cir. 2018)).  As this Court aptly noted in Reynolds v. Turning Point Holdings Co., if class members would "have to tell their own, comparable tales to establish [Defendant's] liability," predominance cannot be satisfied.  Id. at *8 (denying class certification where "other employees might have had similar experiences, but there [wa]s no way to know without asking each of them").

Such is the case here.  Plaintiff's claims first hinge on whether Defendant misclassified putative class members as exempt, a claim which requires an analysis of the primary duty

performed.  However, DAO Paralegals have materially different duties and responsibilities.  See supra, Sec. II(B)(1).  The question of exemption status is simply not capable of common, class-wide proof, and, to answer the question of misclassification, evidence of every Paralegal's duties and responsibilities would need to be presented and analyzed to determine if Defendant misclassified them as exempt.  This diversity of duties is fatal to Plaintiff's bid for class certification because "without a common narrative in the record as to what the [paralegals] did on a day-to-day basis, the Court cannot extrapolate the primary duty of all [paralegals] on a class-wide basis."  See Swank v. Wal-Mart Stores, Inc., No. 2:13-cv-1185, 2018 WL 2684102, at *6-7 (W.D. Pa. June 5, 2018) (denying class certification in PMWA claim where exemption status was at issue because class members "spent their days performing vastly different tasks" and, therefore, individual questions predominated).  In short, because the "tasks and responsibilities of a [DAO paralegal] can vary wildly depending on which witness is speaking," individual questions predominate.  See id.

Similarly, to answer the question of whether Paralegals worked over 40 hours in a workweek, again, class members would have to present their own "comparable tales" showing (1) the hours worked by each Paralegal in a given workweek and (2) the amount each Paralegal was compensated each week in order to establish Defendant's liability.  See Reynolds, 2020 WL 7336932 at *8.  The individualized nature of the inquiry is exposed by Plaintiff's own testimony. Plaintiff does not rely on common schedules, written records, or any other potential class-wide evidence to establish that the putative class was misclassified or that the putative class worked over 40 hours in a workweek without proper compensation.  Instead, Plaintiff simply relies on her and Plaintiff Schnitzer's own testimony about what they did and when they did it.  But that testimony does not and cannot establish Defendant's liability to the putative class as a whole.  To

establish liability, the Court would need to hear each and every class member's "comparable tales," and therein lies the fatal flaw in Plaintiff's request for certification.  See id. (finding plaintiff failed to satisfy predominance prong because of individual questions about whether each class member performed compensable, untipped side work, and plaintiff's own testimony about what she did could not satisfy the individual inquiries with respect to the class members).

Plaintiff's argument that predominance is met because all DAO Paralegals use the same universal timekeeping system misses the mark entirely.  To be sure, even if class members operate under uniform policies, "those policies only create liability if they require [Paralegals] to [work more than 40 hours]."  See Chesapeake & Del. Brewing Holdings, LLC, 2020 U.S. Dist. LEXIS 87991 at *22.  Plaintiff has not pointed to any common evidence that will prove that Paralegals did so.  Indeed, there is ample evidence to show that many putative class members never worked over 40 hours in a workweek.  (Doc. No. 26-1 – Doc. No. 26-3.)

As such, individual questions plainly predominate, and there is no method of proving class-wide liability through common proof.  Therefore, the class cannot be certified.

## 2.  *Plaintiff Has Failed to Establish the Superiority Requirement.*

Lastly, Plaintiff has failed to show Rule 23(b)(3)'s superiority requirement, which necessitates evaluation of whether a class action is the best method to achieve a "fair and efficient adjudication of the controversy."  See Fed. R. Civ. P. 23(b)(3).  Together with predominance, the superiority criterion is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23 advisory committee notes).  The Court must "balance, in terms of fairness and efficiency, the merits of a class action against those

of alternative methods of adjudication." In re Warfarin Sodium Antitrust Litig., 391 F.3d 517, 533-43 (3d Cir. 2004) (internal quotation omitted).

For all of the reasons identified throughout this Brief, including the necessity of highly individualized factual inquiries, the Court should conclude that Plaintiff has not satisfied the superiority requirement here.  See O'Gara ex rel. Estate of Portnick v. Countrywide Home Loans, Inc., 282 F.R.D. 81, 92 (D. Del. 2012) (finding superiority requirement not met where "the multitude of individualized issues present" in proving liability and damages "would entail complicated mini-litigations"); Schwenk v. Garcia, No. 1:21-CV-02079, 2023 U.S. Dist. LEXIS 11753, at *33 (M.D. Pa. Jan. 24, 2023) ("The same individualized inquiries precluding predominance also preclude superiority, as a jury could more easily adjudicate individualized proofs in separate proceedings."). These individualized, predominating inquiries will severely hinder, if not eliminate, the ability for the class members' claims to be adjudicated in a fair and accurate manner.  Plaintiff has offered no suggestion regarding how, as a practical matter, the Court will address these overarching individualized issues and undertake these varied analyses. As such, class treatment is not the superior method for resolving these claims, and the Court should deny Plaintiff's Motion for Class Certification.

## V.    CONCLUSION

For all of the foregoing reasons, Defendant requests that this Honorable Court deny Plaintiff's Motion to Proceed as a Class Action Pursuant to Fed. R. Civ. P. 23.

WHEREFORE, Defendant respectfully requests that the Court deny Plaintiff's Motion to Proceed as a Class Action under Rule 23.

Dated: December 18, 2023            Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

<u>/s/ Michael D. Jones</u>
Michael D. Jones
Laura A. Cottington
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
mdjones@eckertseamans.com
lcottington@eckertseamans.com
(215) 851-8461
*Attorneys for Defendant*

24

## **CERTIFICATE OF SERVICE**

I, Michael D. Jones, hereby certify that on December 18, 2023, I caused a true and

correct copy of the foregoing to be filed via the Court's ECF system, which will send notification

of such filing to the following counsel of record:

Mary Kramer
Michael Murphy
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
mkramer@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com

*Attorneys for Plaintiff*

*/s/ Michael D. Jones*