# EXHIBIT 1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA<br>☒ EEOC | 530-2023-04101 |

Philadelphia Commission on Human Relations  and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Marybelle Fayad | (201) 566-1821 | 5/26/1988 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1416 N. 27th Street, Philadelphia, PA 19121 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| City of Philadelphia - Philadelphia District Attorney's Office | 501+ | (215) 686-8000 |

| Street Address | City, State and ZIP Code |
|---|---|
| Three South Penn Square, Philadelphia, PA 19107 | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)
☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: Jan. 2019    Latest: Present
☒ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

I, MARYBELLE FAYAD, hereby bring this Charge of Discrimination against the City of Philadelphia - Philadelphia District Attorney's Office (hereinafter "Respondent"), with respect to differential treatment on the basis of my national origin (Lebanese), and for being retaliated against for my good-faith reports of discrimination in connection thereto, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Philadelphia Fair Practices Ordinance ("PFPO").

Respondent hired me in or around January 2019, for the position of Paralegal in Respondent's Diversion Unit (Sub-Unit Mental Health). During my employment with Respondent, I received positive reviews on my performance, occasional praise, and no justifiable discipline.

By way of background, during my interview for the aforementioned position, Respondent's First Assistant, Bob Listenbee ("Mr. Listenbee"), unnecessarily discussed my national origin (Lebanese), and asked "what do people typically say when you tell them you are Lebanese?" Upon information and belief, Mr. Listenbee is not of middle eastern dissent.

By further way of background, upon my hire, I was subjected to a hostile work environment by Respondent's Supervisor, Flo Messier ("Ms. Messier"). Upon information and belief, Ms. Messier is not of middle eastern dissent. The aforementioned hostile work environment became sufficiently severe and pervasive enough to alter the terms and conditions of my employment with Respondent, resulting with my intended resignation. However, subsequent to apprising Respondent's Director of Administration, Ceclia Madden ("Ms. Madden"), of the hostile work environment I was being subjected to, Ms. Madden suggested I transfer rather than resign. Ultimately, on or about July 19, 2021, I was transferred to Respondent's Conviction Integrity Unit.

Following my transfer, Respondent did not conduct my performance evaluation for 2021 until on or about March 7, 2022. Critically, merit-based raises are given subsequent to performance evaluations. When I complained to Respondent's Human Resources Director, Elizabeth Martin ("Ms. Martin"), regarding the delay of my performance evaluation, I was told it was an "administrative oversight." However, when considering (1) I completed and submitted a self-evaluation form to Ms. Madden on or about July 28, 2021; (2) Respondent's procedure requires supervisors to meet with the Executive Team to discuss individual performance, where my performance should have been discussed; and (3) other employees who, upon information and belief are not of middle eastern dissent, transferred during an evaluation period have confirmed receiving their performance evaluations. (continued below)

| | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 03 / 29 / 2023      *Marybelle Fayad*<br>Date           Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>**530-2023-04101** |
|---|---|---|

Philadelphia Commission on Human Relations and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In light of the aforementioned, it becomes evident Respondent's "administrative oversight" is an isolated incident that only affected me and was predicated on my national origin and/or ethnicity. Moreover, subsequent to finally receiving my performance evaluation in or around March 2022 for FY21, Respondent did not provide me with a merit-based raise. Thereafter, on or about May 12, 2022, I reached out to Ms. Madden and Ms. Martin to question my performance evaluation and being denied a merit-based raise, and supplied documents in support thereof. On or about June 24, 2022, Ms. Martin responded to my complaint advising the raises were discretionary. However, upon information and belief, my coworkers, who are not of middle eastern dissent, all received raises subsequent to their performance evaluations.

Shortly thereafter, on or about July 25, 2022, despite providing Ms. Madden with documentation supporting my positive performance, Ms. Madden advised I was being placed on a sixty-day Performance Improvement Plan ("PIP"). Ms. Madden further advised I would not be receiving a merit-based raise for FY22 as a result thereof. Upon information and belief, my coworkers, who were not of middle eastern dissent, and predominately, if not exclusively, Caucasian, received merit-based raises for FY22. When I followed up with Ms. Madden later that week via email, I cc'd my direct report, Michael Garmisa ("Mr. Garmisa"), on the email, and requested Ms. Madden speak with Mr. Garmisa, who would confirm that I was positively performing my duties and meeting expectations. Notably, when I personally met with Mr. Garmisa to discuss my FY22, he assured me that this was not a negative review and that I was performing well in the unit. It is also important to note that Mr. Garmisa informed me that he was not aware that I was being placed on a PIP until he saw the email I sent to Ms. Madden. Upon information and belief, Mr. Garmisa met with Ms. Martin and Ms. Madden between July 25, 2022 and August 18, 2022 to discuss the issues I raised about the PIP. During this meeting, Mr. Garmisa was told that instead of a PIP, I would be placed on a "coaching plan." When I learned that I would now be placed on a coaching plan, on or around August 18, 2022, and would be reevaluated in sixty (60) days, I did not receive any follow ups from my supervisor or the Executive Team.

On or about October 7, 2022, I sent Respondent's Executive Team as well as Human Resources a follow-up email regarding my PIP and/or coaching plan, advising that sixty-days had passed and I still did not receive anything regarding Respondent's coaching plan. However, Respondent failed to respond to my follow-up. Additionally, on November 16, 2022, I asked Mr. Garmisa if anyone had reached out to him regarding the coaching plan or the follow up email I had sent and he said no.

It should be noted, upon my hire, I was compensated at a substantially lower rate of pay than my coworkers, who had similar experience as myself (over four years of civil legal experience). I was informed by Ms. Madden that civil legal experience would not be counted as criminal legal experience, and compensation would not be adjusted to account for same and deemed irrelevant. However, upon researching the compensation of my coworkers (the aforementioned being public record), I uncovered that (1) a paralegal was hired in January 2019, and compensated at rate which reflected four years of experience, despite having no civil and/or criminal legal experience; (2) a paralegal was hired in February 2019, with no criminal legal experience, but compensated at a rate which reflected their 11 years of civil experience; (3) another paralegal was hired with no criminal legal experience, but compensated at a substantially higher rate than myself; and (4) a paralegal was hired in October 2018, and compensated at a rate which reflected six years of experience despite having no criminal and/or civil legal experience. Critically, none of the aforementioned employees of Respondent are of middle eastern dissent, and were predominately, if not exclusively, Caucasian. Upon information and belief, I was subjected to disparate pay practices by Respondent on the basis of my national origin and/or ethnicity, in violation of Title VII, and the PFPO.

As a result of the aforementioned, on or about December 6, 2022, I made a formal complaint via email, to Respondent's District Attorney, Lawrence Krasner ("Mr. Krasner"). In response to my complaint, Respondent's Deputy Chief of Staff reached out to schedule a meeting for on or about January 4, 2023, with Respondent's Director of Human Resources, Ms. Martin and myself. At this meeting, rather than address my good-faith reports of discrimination, Ms. Martin and Respondent's Deputy Chief of Staff raised issue with my performance in the Conviction Integrity Unit. Furthermore, I was told I would be transferred to a new unit, given a coaching plan, and placed on a PIP. Additionally, I was advised by Ms. Martin and Respondent's Deputy Chief of Staff that I was on my final warning prior to being terminated. To be clear, Respondent's meeting was devoid of any attempt to address my good-faith report of discrimination.

I believe, and therefore aver, that I am being subjected to differential treatment on the basis of my national origin (Lebanese), and retaliated against for my good-faith reports of discrimination in connection thereto, in violation of Title VII and the PFPO.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

03 / 29 / 2023                 *Marybelle Fayad*
Date                           Charging Party Signature

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*