## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MARYBELLE FAYAD,** | **Case No. 2:23-cv-00032-JDW** |
| *Plaintiff,* | |
| v. | |
| **CITY OF PHILADELPHIA,** | |
| *Defendant.* | |

## MEMORANDUM

In most workplaces, some employees manage the business's affairs and exercise broad discretion over what they do and how and when they do it. For them, "[t]ime is an illusion. Lunchtime doubly so." Douglas Adams, *The Ultimate Hitchhiker's Guide* 18 (1986). Employees like that are exempt from the Fair Labor Standards Act's overtime requirements. But other employees don't have that kind of discretion. They have to do what they're told, or the tasks they perform are not geared towards the enterprise's management or operation. Those employees are not necessarily exempt from the FLSA's requirement. For them, lunchtime is not an illusion because they are entitled to overtime if they work more than 40 hours a week.

Marybelle Fayad claims in this lawsuit that the City of Philadelphia District Attorney's Office ("DAO") misclassifies its paralegals as exempt under the FLSA, but that they should get overtime pay. She seeks to join other paralegals as plaintiffs in her lawsuit,

both as a collective under the FLSA and as a class seeking relief under the Pennsylvania Minimum Wage Act. Those two paths demand distinct standards. In Ms. Fayad's case that difference is meaningful. While conditional certification of her FLSA collective action is appropriate, her class action under Rule 23 cannot proceed.

## I.    BACKGROUND

### A.    The DAO's Paralegals

The DAO consists of twenty-five Units. A supervisor leads each Unit. From 2020 to 2023, the DAO employed 200 paralegals across those Units. The DAO pays paralegals on a salary basis. It uses one job posting to recruit candidates to fill all paralegal positions across its Units. In that job posting, the DAO describes a paralegal's responsibilities as including "case preparation, communication with victims and witnesses, compilation of statistics, maintenance of records and files, legal research, document review and production and coordination with outside agencies." (ECF No. 31-5 at 23:4-12.) And according to both paralegals and Unit supervisors, that description matches paralegals' actual, day-to-day job responsibilities. (*See* ECF No. 24-7 ¶ 6; ECF No. 24-9 ¶ 6; ECF No. 31-7 at 17:20-18:1; ECF No. 31-8 at 17:23-18:3.) Paralegals don't make independent choices free from supervision. Rather, Unit supervisors testified that they exercise significant oversight over their paralegals. (*See, e.g.*, ECF No. 31-6 at 19:21-20:22; ECF No. 31-7 at 17:22-18:5; ECF No. 31-8 at 13:10-12.)

The DAO considers paralegals to be exempt employees for purposes of the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. As a result, it does not pay paralegals for hours worked beyond 40 hours in a workweek. DAO employees use timekeeping software to record their hours worked. The DAO requires paralegals to report 7.5 hours worked per day even if a paralegal works more than 7.5 hours in a given day. If a paralegal tries to enter an amount over 7.5 hours, the timekeeping software returns an error. As a result, the DAO doesn't have standardized records showing if or when a paralegal worked overtime on a given day. (*See* ECF No. 31-3 at Answer to Interrogatory No. 3.) Ms. Fayad keeps track of her overtime hours outside of the DAO's timekeeping software.

Ms. Fayad has been a paralegal with the DAO since 2019. She has worked in three Units: the Diversion and Mental Health Unit; the Conviction Integrity Unit; and the Municipal Court Unit. In the Mental Health Unit, Ms. Fayad worked more hours than other paralegals in her Unit and had a close relationship with her supervisor. In the Mental Health Unit, Ms. Fayad routinely stayed at work until 8:00 pm or after and worked weekends. (ECF No. 31-24 at 27:11-22.) In the Conviction Integrity Unit, Ms. Fayad didn't work overtime. (*Id.* at 36:22-37:7.) And in the Municipal Court Unit, Ms. Fayad works overtime about once a week. (*Id.* at 37:15-38:6.) On March 29, 2023, Ms. Fayad filed an EEOC Charge of Discrimination against the DAO alleging differential treatment based on national origin and retaliation.

Ms. Fayad doesn't know whether and to what extent paralegals in other Units worked overtime. (ECF 31-24 at 42:9-10.) Another paralegal, Rebecca Schnitzer, estimates that her typical work week ranges from 40 to 45 hours in the Major Trials Unit and the Homicide/Non-Fatal Shootings Unit. (ECF 31-2 at 18:20-24.) About six to ten times during her tenure, Ms. Schnitzer stayed a couple hours past her regular hours to finish her work. (*Id.* at 18:25-19:4.)

Supervisors also report varied paralegal hours across Units. Liam Riley, the supervisor of the Major Trials Unit, oversees roughly fifty paralegals. He testified that those paralegals regularly work over forty hours a week because they "need to get that job done … especially when they're in court a lot, we're not looking for them to be at their desk at 9:00 and checking that they leave not before 5:30 … [they] might come in that morning at 8:00 to get things ready before the 9:00 o'clock court start. If [the paralegals] have a busy day in court, they might stay until 6:00 or 7:00 to get the preparation for the next day done." (ECF No. 31-20 at 17:17-18:11.) By contrast, supervisors of the Post-Conviction Relief Unit, the Diversion Unit, and the Juvenile Court Unit report that their paralegals do not work more than 7.5 hours per day. (*See* ECF No. 31-6 at 18:16-19:20; ECF No. 31-7 at 15:4-17:21; ECF No. 31-10 at 18:3-8; 20:7-10.)

## B.     Procedural History

On January 4, 2023, Ms. Fayad sued the DAO alleging violations of the FLSA and PMWA. Later, Ms. Schnitzer, a former paralegal at the office, joined as an opt-in plaintiff.

The Parties have completed some discovery, consisting of written exchanges and depositions.

On September 20, 2023, Ms. Fayad moved for conditional certification of her FLSA collective action pursuant to 29 U.S.C. § 216(b). On November 3, 2023, Ms. Fayad moved to certify a class action pursuant to Federal Rule of Civil Procedure 23 for her remaining PMWA claims. In both Motions, Ms. Fayad seeks certification of a class defined as: "All persons presently or formerly by Defendant in the position of Paralegal within the Philadelphia District Attorney's (D.A.) Office or in positions with substantially similar job duties, who worked for Defendant at any point in the past three (3) years who were denied overtime compensation at their regular rate of pay for all hours worked over forty (40) in a workweek due to their misclassification as 'exempt' under the PMWA and who were paid on a salary basis." (ECF No. 24-1 at 2; ECF No. 31-1 at 1.)

## II.   ANALYSIS

### A.   Statutory Framework

 "Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework." *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020). Under the FLSA and the PMWA, an "employee" is entitled to compensation at a rate of one and one-half times the regular rate for all hours worked above 40 in a workweek. *See* 29 U.S.C. § 207; 43 Pa. Stat. § 333.104(c). A plaintiff claiming a wrongful denial of overtime "has the

initial burden of proving that an employer-employee relationship exists." *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 359 (3d Cir. 2021). "Once this burden is met, the employer bears the burden of proving entitlement to any exemption or exceptions." *Id.*

The DAO considers paralegals to be administrative employees pursuant to 29 U.S.C. § 213(a)(1). To qualify as an "administrative" employee, that employee must (1) receive a salary, rather than an hourly wage, (2) "conduct office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) have primary duties that "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. Administrative duties include, but are not limited to, "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities ...." *Id.* Any employee exercises "discretion and independent judgment" if she has the "authority to make an independent choice, free from immediate direction or supervision," even if someone reviews those decisions. 29 C.F.R. § 541.202(c).

B.     **Class Action Certification**

Federal Rule of Civil Procedure 23(a) requires a plaintiff to establish: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). If a claim satisfies those four requirements, a plaintiff must then satisfy one subsection of Rule 23(b). Pursuant to Rule 23(b)(3), certification is appropriate where (5) common questions of law or fact predominate (predominance), and (6) the class action is the superior method for adjudication (superiority). *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). That class must also be "currently and readily ascertainable based on objective criteria." *Id.* at 593.

When conducting this analysis, a court must be careful not to certify a class "casually." *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 132 (E.D. Pa. 2015). Instead, class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that the moving party has fulfilled the necessary requirements. *Ferreras v. American Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). This inquiry will at times require a court to examine issues that overlap, to some extent, with the final merits determination. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008). However, the Court

should only engage in this overlapping analysis to the extent necessary to resolve the class certification motion, and no more. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

The party seeking class action status "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus*, 687 F.3d at 591. That party must have the evidence to do so at the time it seeks class certification. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 318.

### 1.    Ascertainability

To establish that the proposed class is ascertainable, a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citation omitted). When class members "are impossible to identify without extensive and individualized fact-finding[,] ... then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

A class consisting solely of the DAO's paralegals during the relevant time period is ascertainable. The DAO has identified 200 paralegals who work or have worked for the DAO during the past three years. That's a reliable and feasible way to identify class status. The DAO doesn't contest the ascertainability of the class.

But issues arise because Ms. Fayad seeks inclusion of individuals "with substantially similar job duties" as the paralegals. Reasonable minds could disagree on the scope of the phrase "substantially similar." Ms. Fayad doesn't clarify which individuals might fall within that category. She hasn't identified a set of job titles that those individuals hold or explained where in the DAO's records one could locate such individuals. *See Marcus*, 687 F.3d at 593 ("[W]here nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails."). It's possible that such records exist, but it is Ms. Fayad's burden to show them to me. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013). Because Ms. Fayad hasn't proposed a method for identifying those individuals, I conclude that she hasn't met the ascertainability requirement, at least as to this aspect of her proposed class definition. I will review the remainder of the class action requirements limiting the proposed class only to those with the job title of "paralegal."

### 2.     Numerosity

While there is no minimum number of plaintiffs necessary to sustain a class action, courts generally find that if the number of potential plaintiffs exceeds 40 then numerosity is met. *Marcus*, 687 F.3d at 595. The plaintiff "must ... be prepared to prove that there are *in fact* sufficiently numerous parties." *Dukes*, 564 U.S. at 350 (emphasis in original). Although "mere speculation" can't meet the plaintiff's burden, the plaintiff doesn't need to "offer direct evidence of the exact number and identities of the class members." *Marcus*,

687 F.3d at 596. If the plaintiff proffers "sufficient circumstantial evidences specific to the ... problems [and] parties ... actually covered by the class definition[,]" then I can rely on "common sense" to make a factual finding regarding the size of the class. *Id.*

The DAO employed 200 paralegals during the relevant time. The Office classified all those paralegals as exempt from overtime. Based on those two undisputed facts, it's a matter of common sense (and not speculation) that a paralegal who worked over forty hours was ineligible for and thus didn't receive overtime pay. Testimony from the supervisor of the Major Trials Unit (which includes 50 paralegals) confirms that paralegals in his Unit often arrive early (before 9:00) and stay late (after 6:00) after a full day in court. Ms. Fayad has satisfied the numerosity requirement.

### 3.    Commonality

Commonality requires a showing that "there are questions of law or fact common the class." Fed. R. Civ. P. 23(a)(2). The bar for commonality is "not a high one." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quotation omitted). When the "defendant's conduct is common as to all of the class members[,]" the standard is met. *Id.* (quotation omitted). The proposed class's claim "must depend on a common contention" whereby "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

The common question in this case is whether the DAO misclassified its paralegals as exempt from overtime eligibility, an issue that courts often conclude satisfies the

commonality requirement. *See, e.g.*, *Hall v. Accolade, Inc.*, No. CV 17-3423, 2020 WL 1477688, at *5 (E.D. Pa. Mar. 25, 2020); *Espinal v. Bob's Disc. Furniture, LLC*, No. CV172854JMVJBC, 2020 WL 6055123, at *4 (D.N.J. Oct. 14, 2020). The DAO's policy as applied to all its paralegals was to classify them "administrative" workers exempt from overtime. Thus, the truth or falsity of that classification resolves a question common to all proposed class members. Commonality is met.[1]

### 4.    Typicality

For class certification, a plaintiff's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). That requirement "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus*, 687 F.3d at 598. "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id.*; *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

Ms. Fayad's claim is typical because it arises from the same legal theory as the claims of the class: the DAO misclassified its paralegals as overtime exempt. Ms. Fayad, as

---

[1] The DAO argues that the questions of (1) misclassification and (2) the number of overtime hours worked render individualized (as opposed to common) answers. I address these arguments in my analysis of the predominance requirement. *See Reyes*, 802 F.3d at 486 ("It is often appropriate to discuss commonality and predominance together because the commonality inquiry is subsumed into the predominance inquiry.").

one such paralegal, wasn't paid overtime. Because her legal claim shares its origin with the class's claims, "even relatively pronounced factual differences" between her situation and other proposed class members don't disturb a finding a typicality. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184 (3d Cir. 2001), *as amended* (Oct. 16, 2001). The DAO argues that the factual record shows Ms. Fayad working more overtime hours relative to the other class members. But typicality doesn't require identical injuries. Rather, "a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Id.*

### 5.    Adequacy

"[T]he representative parties [in a class action must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[2] "The inquiry therefore focuses primarily on whether the class representatives have conflicts of interest with the putative class members; it does not require that the representatives possess more than 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 122 (E.D. Pa. 2018) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). A named plaintiff must "must be part of the class and possess the same interest and suffer the same injury as the class

---

[2] The adequacy requirement also concerns "the experience and performance of class counsel." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012). The DAO doesn't contest the adequacy of Ms. Fayad's counsel. On that basis, I find class counsel adequate.

members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quotation omitted). However, "not all intra-class conflicts will defeat the adequacy requirement." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012). Only "fundamental" conflicts of interest violate Rule 23(a)(4). *See id.* Conflicts that are hypothetical or speculative don't rise to the level of "fundamental." *See id.*

Ms. Fayad possesses the requisite "minimal degree of knowledge" about the facts of this case which allows her to represent the class. *New Directions Treatment Servs.*, 490 F.3d at 313. That she doesn't know whether and to what extent each of her colleagues worked unpaid overtime isn't fatal to her ability to represent the class.

Contrary to the DAO's argument, factual differences between Ms. Fayad's situation and the class's situation don't signify misalignment between Ms. Fayad's interests and that of the class. *See Dewey*, 681 F.3d at 183. The DAO characterizes Ms. Fayad's relationship with her supervisor, her responsibilities, and her hours as "atypical" as compared to the class. From that characterization, the DAO asks me to conclude that Ms. Fayad can't represent the proposed class. Drawing that conclusion requires a leap in logic that I'm not willing to make. The intra-class difference, to the extent it exists, doesn't give me pause as to Ms. Fayad's incentive or ability to work for the interests of the class. Any conflict based on this atypicality is speculation, not something that affects Ms. Fayad's ability to represent the class.

The fact that Ms. Fayad has a charge of discrimination against the DAO also does not create a fundamental intra-class conflict. *See Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA), 2016 WL 5338551, at *5 (S.D.N.Y. Sept. 23, 2016). It might mean she's angry at the DAO. But whether that anger translates to motivation to pursue claims against the DAO (which would be good) or converts Ms. Fayad into a zealot who won't consider reasonable settlements (which would be bad) is just speculation. Absent a stronger showing, I won't conclude that Ms. Fayad is motivated by "personal animus" or "bears a grudge" against the DAO such that she wouldn't represent the class effectively. *See Stoneback v. ArtsQuest*, No. 12-CV-03287, 2013 WL 3090714, at *11 (E.D. Pa. June 20, 2013); *Real Est. All., Ltd. v. Sarkisian*, No. CIV. A. 05-CV-3573, 2007 WL 2814591, at *4 (E.D. Pa. Sept. 24, 2007).

### 6. Predominance

Predominance requires "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Rule 23(b)(3) requires that "the common, aggregation-enabling, issues in the case [be] more prevalent or important than the non-

common, aggregation-defeating, individual issues." *Id.* (citation omitted). In sum, the inquiry "tests whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623 (citation omitted).

"In practice, this means that a district court must look first to the elements of the [plaintiff's] underlying claims and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of the available evidence and the method or methods by which the plaintiff[] propose[s] to use the evidence to prove' those elements." *Reinig*, 912 F.3d at 128 (quoting *Marcus*, 687 F.3d at 600).

For failure to pay overtime under the PWMA, there's liability if Ms. Fayad proves that the proposed class worked more than 40 hours a week without adequate compensation. *See* 43 P.S. § 333.104(c); 34 Pa. Code § 231.41. Ms. Fayad must proffer class-wide evidence to show that a) the DAO improperly classified paralegals under the PWMA and b) the paralegals worked overtime hours. *See Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 125 (E.D. Pa. 2018).

### a.     Classification

Ms. Fayad has class-wide evidence to dispute the DAO's arguments in favor of applying the exemption. *First*, there's no dispute that paralegals are paid on a salaried basis. *Second*, Ms. Fayad has evidence that tends to show, on a class-wide basis, that paralegals perform administrative tasks. That evidence starts with the DAO's paralegal job posting, which lists the job duties of the office's paralegals. Job descriptions by themselves

aren't determinative of exemption status, of course. Instead, the substance of an employee's actual work matters more than the employer's policies. *See Quiles v. Wal-Mart Stores*, Inc., No. CV 16-9479, 2020 WL 1969940, at *5 (D.N.J. Apr. 24, 2020); *Baum v. AstraZeneca LP*, 605 F. Supp. 2d 669, 682-83 (W.D. Pa. 2009). The testimony of Unit supervisors confirms that the paralegals perform the duties listed in the job posting, so Ms. Fayad has covered her bases on that score. *Third*, Ms. Fayad uses the supervisors' depositions to establish that across the board, paralegals don't exercise independent judgment and discretion in their day-to-day work.

While the DAO focuses on granular differences in paralegals day-to-day tasks, those differences don't matter to the administrative exemption inquiry. All these tasks fall within the scope of "administrative" work under the FLSA. *See* 29 C.F.R. § 541.201(a)-(b). The DAO doesn't argue otherwise. In fact, its own conduct both in running its business and in this case supports that conclusion. The DAO classifies all paralegals as exempt because they are paralegals; it does not make a unit-by-unit classification. And in this case, it asserted an affirmative defense that "Plaintiff's and the Putative Class Members' primary duty is the performance of nonmanual work directly related to the management or general business operations of [the DAO]." (ECF No. 31-3 at Answer to Interrogatory No. 11.) That is, the DAO's discovery response treated the paralegals all as one group, not separately based on their Unit assignment. The DAO's lengthy recitation of each task that the paralegals perform in each Unit is just smoke and mirrors. In sum, the DAO cannot,

on one hand, treat all paralegals the same and, on the other hand, argue that Ms. Fayad doesn't have common proof with regards to the classification question.

The story could be different if the DAO pointed to discrepancies between the paralegals' duties where some engaged in non-administrative work and others did not. For example, in *Quiles*, Judge Arelo denied class certification of Overnight Assistant Store Managers working at Wal-Mart who claimed that they were misclassified as administrative employees and thus entitled to overtime compensation. *See Quiles*, 2020 WL 1969940, at *6. Judge Arelo concluded that the administrative exemption wasn't susceptible to class-wide proof because evidence established some Assistant Store Managers had the primary duty of performing manual work such as unloading trucks or stocking shelves, while others were tasked with supervising the store and managing associates. *See id.*; *see also Swank v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1185, 2018 WL 2684102, at *6 (W.D. Pa. June 5, 2018). In contrast, the DAO doesn't argue that any paralegal performs different types of work, even if the specific tasks that they perform are different. The variety of tasks that the paralegals perform in each Unit isn't fatal to Ms. Fayad's class-wide proof because the DAO doesn't (and can't) argue that some of those tasks fall outside of the definition of "administrative" work.

### b. Hours worked

Ms. Fayad doesn't proffer common proof to show that the DAO's paralegals worked over forty hours in a given week. Ms. Fayad offers only the testimony of one Unit

supervisor, Mr. Riley, as "common evidence" of the hours the paralegals worked. But that evidence isn't "common" because it doesn't apply to all 200 paralegals that Ms. Fayad seeks to certify as a class, so it is not "generalized, class-wide proof." *Tyson Foods, Inc.*, 577 U.S. at 454. Mr. Riley spoke only of the fifty or so paralegals in the Major Trials Unit—a Unit where Ms. Fayad did not work (meaning she cannot represent only a class of paralegals from that Unit).[3] Ms. Fayad doesn't argue that this testimony is representative of the class's hours, nor could she in light of the different workflows in different Units.

Ms. Fayad's own experience illustrates that difference. As a paralegal in the Conviction Integrity Unit, Ms. Fayad did not work overtime, but she did so about once a week in the Municipal Court Unit. And Ms. Fayad's own argument demonstrates that common issues will not predominate. She explains that "without the Paralegals to testify about their work hours, there is no way of knowing what their work hours were ...." (ECF No. 35 at 1-2.) That's the epitome of an issue on which individual issues will predominate.

Ms. Fayad argues that the lack of common proof about hours worked arises because the DAO's timekeeping software didn't track overtime hours, so it's the DAO's problem. That's incorrect. While "employees' wage claims should not suffer simply due to an employer's failure to maintain employee pay records[,]" that doesn't absolve an

---

[3] *See Amchem Prod., Inc.*, 521 U.S. at 625 ("A class representative must be part of the class.") (alterations and internal quotation omitted); *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp.2d 189, 207 (S.D.N.Y. 2003) (named plaintiff cannot seek damages for a class that has standing when that plaintiff is not a member of the class).

employee from meeting his burden of proof. *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 482 (3d Cir. 2020). As the plaintiff seeking class certification, Ms. Fayad must meet the predominance standard with some common evidentiary support. *See Harnish v. Widener Univ. Sch. of L.*, 833 F.3d 298, 304 (3d Cir. 2016). That common proof doesn't have to be time records, but it has to be "sufficient ... to show the amount ... of [the employees'] work as a matter of just and reasonable inference." *Hargrove*, 974 F.3d at 482 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). In *Hargrove*, the plaintiff had alternative common ways of proving the hours that the employees worked, but Ms. Fayad doesn't offer any alternative. She just asks me to draw an inference from the absence of records.

Because the DAO is "only liable if class members performed work for which they were improperly compensated[,]" whether and to what extent the paralegals worked overtime is necessary to determine liability. *Reynolds v. Chesapeake & Delaware Brewing Holdings, LLC*, No. CV 19-2184, 2020 WL 2543777, at *7 (E.D. Pa. May 19, 2020). Other judges analyzing wage-and-hour class claims have denied class certification when plaintiffs have insufficient common proof as to hours worked. *See, e.g.*, *Garcia v. Vertical Screen, Inc.*, No. CV 18-4718, 2022 WL 282541, at *6 (E.D. Pa. Jan. 31, 2022); *Diabate v. MV Transp., Inc.*, No. CIV.A. 14-857, 2015 WL 4496616, at *11 (E.D. Pa. July 20, 2015); *Reynolds*, 2020 WL 2543777, at *7.

To be clear, I am not requiring Ms. Fayad to prove the *measure* of each paralegal's damages. *See Harnish*, 833 F.3d at 305; *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 (3d Cir. 2015) But Ms. Fayad must be able to demonstrate the fact of damage (meaning injury or impact) on a class-wide basis. *See Harnish*, 833 F.3d at 305. She can't do so. Because I conclude that Ms. Fayad cannot satisfy the predominance requirement, I need not address the superiority prong.

### C.   Conditional Certification

The Parties have disputes about both whether to certify a collective and what should be in any notice that Ms. Fayad sends to the collective.

#### 1.   Certification

"Rule 23 class certification and FLSA collective action certification are fundamentally different creatures." *Reinig*, 912 F.3d at 131. The FLSA's enforcement mechanism provides that "any one or more employees for and on behalf of himself or themselves and other employees similarly situated" may bring an action against her employer. 29 U.S.C. § 216(b). However, unlike a class action under Rule 23, in a collective action under the FLSA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Individuals must opt in to an FLSA collective action. *See Halle v. West Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). District courts must determine if those who want to opt in are similarly situated.

Courts in the Third Circuit follow a two-step process to determine whether a FLSA plaintiff may proceed with a collective action or instead must pursue her claims individually. *See Zavala v. Wal–Mart Stores, Inc.*, 691 F.3d 527, 535–37 (3d Cir. 2012). The first step in this process is conditional certification. *See Halle*, 842 F.3d at 224. If a court grants conditional certification, the sole consequence is the "dissemination of court-approved notice to potential collective action members." *Id.* (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). Although not true certification, a district court exercises its discretionary authority to oversee and facilitate the notice process. *See id.*

The Parties start with a dispute about whether I should apply a "modest factual showing" or an intermediate standard to the certification inquiry. *Zavala v. Wal–Mart Stores, Inc.*, 691 F.3d at 536 n.4 (noting that the Third Circuit has adopted the "modest factual showing" standard). But it doesn't matter because the outcome would be the same either way. Ms. Fayad has shown that she and other paralegals are similarly situated through her and Ms. Schnitzer's declarations, the Answer to the Complaint, the DAO's discovery responses, and the testimony of Unit supervisors attesting that paralegals all perform tasks consistent with the DAO's job posting for the paralegal position. Taken together, that evidence shows that the DAO has a policy of classifying paralegals as administratively exempt under the FLSA, and that it therefore fails to pay the paralegals overtime.

Unlike with the class certification inquiry, I don't have to decide if these issues predominate because there will not be absent collective members. Anyone who opts into the collective will become a party plaintiff and subject to discovery.

The DAO offers evidence from depositions and affidavits that the paralegals in the office are dissimilar in many ways. While I considered that evidence in determining if the requirements of Rule 23 were met, I don't do so here. At the conditional certification stage, "the merits of the [plaintiff's] claims are not addressed." *Bishop v. AT & T Corp.*, 256 F.R.D. 503, 507 (W.D. Pa. 2009). I will therefore leave the question of "whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs" for another day. *Zavala*, 691 F.3d at 536 at n.4 (citation omitted); *see also Pereira*, 261 F.R.D. at 66 (collecting cases deferring a merits challenge until final certification).

There is one way in which Ms. Fayad's proposed collective falls short, though. Ms. Fayad doesn't proffer any evidence tying her to employees at the DAO with substantially similar job duties. She doesn't tell me who those employees are, or even how to figure it out, nor does she offer any evidence that the DAO also classifies them as exempt from overtime. Without any evidence, the existence of such employees is just speculation. As a result, I will conditionally certify a collective action including only paralegals.

### 2.    Notice

Because Ms. Fayad has met the requisite standard for conditional certification, she may issue court-approved notice to potential class members. For the reasons outlined

above, the Notice shall omit any reference to "positions with substantially similar job duties." Because I have previously dismissed Ms. Fayad's claim of a willful violation of the FLSA, the Notice shall only solicit paralegals who have claims within the applicable two-year limit. To ensure orderly administration of the opt-in period, Ms. Fayad shall disseminate the Notice to all paralegals on the same day, not in waves.

The DAO's other concerns don't warrant changes to Ms. Fayad's proposed notice. Putative collective members may communicate directly with Ms. Fayad's counsel as opposed to a third-party litigation administrator. I won't impose the DAO's stringent limitations on how Ms. Fayad's counsel may use the opt-in plaintiffs' information. While Ms. Fayad may disseminate her notice via email (even if the DAO has only official DAO email addresses for past and future paralegals), the DAO isn't required to provide telephone numbers because Ms. Fayad's counsel should not be making individual solicitation phone calls to the members of the collective. The DAO shall have twenty days to provide contact information to Ms. Fayad.

## III.     CONCLUSION

Ms. Fayad may join other paralegals in her suit through a collective action under the FLSA, but not a class action under Rule 23. The Parties shall meet and confer to resolve issues relating to Ms. Fayad's Notice. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

March 18, 2024                             JOSHUA D. WOLSON, J.